# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2009

Charles R. Fulbruge III
Clerk

No. 07-60447

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff-Appellant

v.

AGRO DISTRIBUTION LLC

Defendant-Appellee

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before JONES, Chief Judge, and GARWOOD and SMITH, Circuit Judges.

EDITH H. JONES, Chief Judge:

The Equal Employment Opportunity Commission brought suit against Agro Distribution, LLC ("Agro") for violating the Americans with Disabilities Act ("ADA") by failing to provide a reasonable accommodation to Henry Velez ("Velez") and by terminating his employment on the basis of his disability. The district court dismissed the suit and awarded approximately $225,000 attorneys' fees and costs to the defendant. The EEOC appeals this dismissal and award. Because Velez is not disabled within the meaning of the ADA, Agro did not refuse to provide reasonable accommodation, and this suit lacked foundation following Velez's deposition, we AFFIRM.

## I. BACKGROUND

Henry Velez testified that he suffers from a medical condition called anhidrotic ectodermal dysplasia, a condition that may be accompanied by an absence of sweat glands. Velez was born with this condition and has never sweated.[1] Being unable to perspire, in hot weather, he must cool himself with water or a fan more frequently than the average individual.

Despite this condition, Velez has worked at manual labor in Mississippi and Louisiana for his entire life. He worked at an un-air-conditioned body shop; his duties included manually removing car parts and straightening them and welding while wearing gloves and a hood. While employed on offshore rigs in the Gulf of Mexico, Velez was assigned 12-hour shifts of manual labor. In another position, Velez cleaned diesel engines while wearing a solid rubber "wetsuit." If he became too hot during these jobs, Velez would take a break, cool off, and return to work.

Eventually, Velez was hired at Agro Distribution's Hattiesburg facility as a truck driver in February 2000. He stopped working for Agro in April but returned to his position as a truck driver in March 2001. His duties included assisting with manual labor. Wesley Graham, the location manager who hired Velez, testified that everyone knew of Velez's condition and knew that Velez needed to take breaks to cool off. When working for Agro, Velez took breaks as he needed them without requesting permission—no one at Agro ever told him that he could not take a break.

On July 15, 2002, Will Griffin, who replaced Graham as facility manager, scheduled all non-office personnel to load barrels on a trailer at 6:00 a.m. the

---

[1] We assume for summary judgment purposes that Velez has anhidrotic ectodermal dysplasia and that he cannot perspire at all. This medical syndrome is unusual. Had there been a genuine issue of fact on relevant ADA issues, it would have been necessary at trial for EEOC to establish the nature and extent of Velez's condition through admissible medical evidence. Fed. R. Evid. 701. No such evidence was presented.

next morning. Agro would receive drums full of cattle feed, deliver them to customers, pick them up empty, and return them to manufacturers for a deposit refund. When empty, the barrels weigh between 15 and 20 pounds. After being used to feed cattle, the barrels are filthy and smelly—loading them is an unpleasant task.

On two previous occasions, Velez and another individual had loaded barrels. Velez testified that the second time they loaded the barrels, it was the last stop in the afternoon, and they rushed to get through the task, so he became nauseated.

Velez spoke with Griffin and informed him that he could not load the barrels in the morning because it would be too hot and he would get sick.[2] Griffin told Velez that if he did not participate in loading the drums, he would "suffer the consequences." Griffin did not tell Velez that he could not take breaks, and Griffin did not tell Velez that he had to participate non-stop, only that Velez had to be present to help. When Velez did not show up to assist with the loading, Agro terminated him.

Velez filed a charge with the EEOC on July 19, 2002. By January 2003, before investigating beyond speaking with Velez and Graham, the EEOC classified the charge as "A2." Ben Bradley, the EEOC Area Director for the Jackson Office, explained in his deposition that this means the Commission was "leaning towards a cause determination" and "[the EEOC] probably could either mediate or [the EEOC] could put a cause out there."

---

[2] Agro disputes the substance of this conversation, asserting that Velez told Griffin that he would not show up because it was unfair that he had to load the barrels on this occasion. Velez had loaded barrels previously and other employees at the facility had not.

In reviewing a grant of summary judgment, we view the disputed facts in the light most favorable to the non-movant.

LaOuida Small, an EEOC Investigator, performed an on-site investigation on May 22, 2003. The next day, Herbert Ehrhardt, Agro's attorney, mailed a letter to the EEOC expressing concern about Small's investigation. Ehrhardt reported that she made insulting remarks during interviews; indicated disgust for the statements of management witnesses; raised her voice; rephrased witnesses' statements to favor the charge; and selectively recorded portions of the statements. The EEOC never responded to this letter and left Small in charge of the investigation.

On June 17, Small sent a letter to Agro summarizing the evidence obtained. The letter includes factual inaccuracies, including statements that the work was performed on July 15, 2002; that the temperature exceeded 85 degrees;[3] and that Agro made "no effort" to accommodate Velez. Agro responded to the letter on July 3, noting these errors and explaining that Velez "routinely performed manual labor in heat far worse than what was expected to accompany this assignment."[4]

Bradley issued a Letter of Determination on July 22. He found that the evidence obtained during the investigation established a violation of the ADA and attached a "conciliation agreement" demanding that Agro reinstate Velez, post a notice, submit to EEOC oversight, and pay Velez $25,629 in back pay, $10,907 in out-of-pocket medical expenses, and $120,000 in compensatory damages.[5]

---

[3] Small's letter states that the temperature was 85 degrees on July 14 and July 15, 2002. The barrels were loaded starting at 6:00 a.m. on July 16. The temperature remained around 70 degrees until 8:00 a.m. and rose to 77 degrees over the next hour.

[4] Velez supported this statement in his deposition, where he testified that he could perform manual labor in 80 degree heat with sufficient breaks.

[5] The record does not reveal any basis for compensatory damages. In its Complaint, the EEOC requested damages for "emotional pain, suffering, loss of enjoyment of life, and humiliation." At his deposition, Velez described losing his job with Agro as "a blessing in

Small called and left a message for Agro's counsel on Friday, August 15. Agro returned the call on Monday, August 18, and left a message requesting a meeting. The next day, the EEOC sent a letter to Agro announcing that conciliation had failed.

On August 22, Agro responded that it was fully prepared to meet with the Commission and again requested a meeting. The EEOC agreed to reopen conciliation in an August 28 letter but required that any settlement must follow its "Remedies Policy." On September 11, Agro requested clarification as to whether EEOC meant that it would be unwilling to settle without reinstatement, full back pay, and compensatory damages. The EEOC did not respond. Agro then offered $3,500 in settlement. Nearly ten months later, on July 16, 2004, the EEOC replied to Agro, rejecting the offer and insisting upon reinstatement or front pay, back pay, medical expenses, and compensatory damages.

The EEOC filed suit on September 27 seeking $250,000 in damages, which included approximately $80,000 in punitive damages. Following Velez's deposition, the EEOC offered to settle for $42,000. The district granted summary judgment to Agro and awarded attorneys' fees dated from Velez's deposition, "the cut-off date for which the EEOC could be given any consideration for acting with any justification." The EEOC appeals.

## II. SUBJECT MATTER JURISDICTION

Although neither party raises the issue of subject matter jurisdiction, this court must consider jurisdiction sua sponte. Howery v. Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001). The district court concluded that the EEOC did not attempt conciliation with Agro in good faith. Several cases have held that the EEOC's failure to conciliate in good faith deprives the federal courts of

---

disguise" and denied suffering any emotional problems from the loss.

jurisdiction to hear the EEOC's suit. See, e.g., EEOC v. Magnolia Elec. Power Ass'n, 635 F.2d 375, 378 (5th Cir. 1981) ("[T]he EEOC's failure to follow these procedures concerning a respondent deprives a federal district court of subject matter jurisdiction in a suit by the EEOC against that respondent.").

The EEOC has a statutory obligation to attempt conciliation with employers: "[T]he Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). The Commission may bring a civil action only if "the Commission has been unable to secure from the respondent a conciliation agreement." Id. at § 2000e-5(f)(1).

Conciliation is "the preferred means of achieving the objectives of Title VII," EEOC v. Pierce Packing Co., 669 F.2d 605, 609 (5th Cir. 1982), and is one of the "most essential functions" of the EEOC. EEOC v. Pet, Inc., Funsten Nut Div., 612 F.2d 1001, 1002 (5th Cir. 1980). A good-faith attempt at conciliation requires that the EEOC: (1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer. EEOC v. Klinger Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981).[6]

The district court correctly concluded that in dealing with Agro, the EEOC did not attempt conciliation in good faith. By repeatedly failing to communicate with Agro, the EEOC failed to respond in a reasonable and flexible manner to the reasonable attitudes of the employer. The EEOC abandoned its role as a neutral investigator and compounded its arbitrary assessment that Agro

---

[6] In contrast to our approach set forth in Klinger, the Sixth Circuit declined to examine the substance of the EEOC's conciliation efforts. See EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984) (refusing to evaluate the form and substance of conciliation).

violated the ADA with an insupportable demand for compensatory damages as a weapon to force settlement. The district court concludes, "It appears that the Commission dealt in an arbitrary manner based on preconceived notions of its investigator and ignored the attempts of Agro's counsel to engage the Commission in settlement discussions." The EEOC's take-it-or-leave-it demand for more than $150,000 represents the coercive, "all-or-nothing approach" previously condemned by this court in Pet, Inc., 612 F.2d at 1002 (per curiam).

The EEOC's failure to comply with its statutory duty does not, however, deprive this court of subject matter jurisdiction. The Supreme Court recently addressed whether the 15-or-more employee requirement for liability under Title VII is jurisdictional. Arbaugh v. Y&H Corp., 546 U.S. 500, 503, 126 S. Ct. 1235, 1238 (2006). In holding that the limitation does not restrict jurisdiction, the Court stated:

> [N]either § 1331, nor Title VII's jurisdictional provision specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor. . . . [W]e think it the sounder course to refrain from constricting § 1331 or Title VII's jurisdictional provision and to leave the ball in Congress' court. If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

546 U.S. at 515–16; 126 S. Ct. at 1245 (internal citations omitted). Following this interpretive approach, we conclude that the EEOC's conciliation requirement is a precondition to suit but not a jurisdictional prerequisite. To the extent that older cases, such as Magnolia Electric Power Association, 635 F.2d at 375, hold that failure to conciliate can deprive courts of subject matter jurisdiction, they have been implicitly overturned by Arbaugh, 546 U.S. at 500.

Holding that conciliation is not jurisdictional does not render this requirement meaningless. Courts remain free to impose a stay for the EEOC to continue prematurely terminated negotiations, and where the EEOC fails to act in good faith, dismissal remains an appropriate sanction. Klingler, 636 F.2d at 107. The EEOC acts unreasonably in disregarding procedural requirements for suit, and attorneys' fees may be awarded. See Pierce Packing, 669 F.2d at 609. Under these facts, dismissing the case and awarding attorneys' fees for the failure to conciliate would not have constituted an abuse of discretion.[7] Because the district court opted to rule on the merits of the case, we proceed to review the summary judgment.

### III. SUMMARY JUDGMENT

The EEOC challenges the grant of summary judgment with its contentions that genuine issues exist as to whether Velez is disabled under the ADA and whether Agro failed to provide reasonable accommodation for his disability.

This court reviews a grant of summary judgment de novo, applying the same standards as the district court. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Id.; FED R. CIV. P. 56(c). On review of a grant of summary judgment, all facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum, 526 F.3d at 248.

### A. Disability

Under EEOC regulations, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of

---

[7] Agro does not argue that (and thus we need not address whether) the district court abused its discretion by only awarding attorneys' fees dated after Velez's deposition.

such individual." 29 C.F.R. § 1630.2(g). "Substantially limits" means a person is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Id. § 1630.2(j)(1)(ii). The EEOC contends that Velez's ectodermal dysplasia is a physical impairment that substantially limits his body's ability to regulate its temperature, a major life activity.[8]

Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139 (1999), directs that substantial limitation analysis must be an individualized assessment that considers the effects of any mitigating measures taken by the individual. Id. at 482; 119 S. Ct. at 2146. "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Id.; 119 S. Ct. at 2146. This court holds that whether an impairment is

---

[8] Because the record creates no genuine factual dispute as to whether Velez was substantially limited in his ability to regulate his body temperature, we assume, without deciding, that the regulation of body temperature constitutes a major life activity under the ADA.

The EEOC, however, alternatively phrases the major life activity as "regulating body temperature through perspiration." Perspiration is one method, among many, of regulating body temperature. If body temperature can be otherwise regulated, the inability to perspire is not "of central importance to daily life." See Toyota Motor Mfg. v. Williams, 534 U.S. 184, 187, 122 S. Ct. 681, 686 (2002). Defining a major life activity at this level of specificity would open the door to claims such as "seeing without corrective lenses." Cf. Sutton v. United Air Lines, Inc., 527 U.S. 471, 475, 119 S. Ct. 2139, 2143 (1999). The EEOC cannot evade Sutton's requirement to consider mitigating measures by narrowly defining a major life activity as accomplished through a particular means.

Congress recently enacted the ADA Amendments Act of 2008, PUB. L. NO. 110-325, 122 STAT. 3553 (2008), but these changes do not apply retroactively. See Rivers v. Roadway Express, Inc., 511 U.S. 298, 313, 114 S. Ct. 1510, 1519 (1994) ("Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.").

substantially limiting "is determined in light of (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent or long-term impact." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995) (citing 29 C.F.R. § 1630 app., § 1630.2(j)).

Heiko v. Columbo Savings Bank, F.S.B., 434 F.3d 249 (4th Cir. 2006), concludes that kidney failure substantially impairs the ability to eliminate bodily waste. The Fourth Circuit compared Heiko's method of waste elimination to that of the average person:

> In order to accomplish the equivalent of urination, Heiko had to . . . tether himself to a dialysis machine three afternoons per week, for a total of twelve hours. This did not include travel time to and from the dialysis center, or the time required to set up the dialysis equipment. Dialysis also unyieldingly set the terms of his daily schedule. While he was able to work a forty-hour week, his condition required him to arrive at work by 7:00 a.m. every other day. And whereas urination does not have side effects, after dialysis Heiko felt nauseous and depleted, unable even to stand in the shower.

Id. at 257. In contrast, the Sixth Circuit described relatively simple treatment when finding that diabetes did not substantially impair major life activities: "The fact that McPherson needed to check his blood sugar regularly and to attend medical appointments does not establish that he was substantially limited in his ability to see or care for himself." McPherson v. Federal Express Corp., 241 Fed. Appx. 277, 282–83 (6th Cir. 2007). The use of artificial means to accomplish a major life activity does not alone establish substantial impairment. The court must examine the impact of the mitigating measures on the worker's individual life.

Velez has over the years adopted a variety of strategies to regulate his body temperature, including drinking cold liquids, sitting in front of a fan, spraying himself with water, resting when laboring on hot days, and using air

conditioning. These behaviors are common and, in some cases, essential in southern climates or during heat spells even for individuals capable of sweating. Velez does not require special measures to regulate his body temperature—he simply uses routine measures with greater frequency or longer duration than the average person. Velez testified that with access to water and a fan, he can do manual labor just like anybody else.[9]

This increased use of ordinary methods of temperature regulation resembles the corrective lenses in Sutton far more closely than it resembles the onerous dialysis regime in Heiko. Because Velez regulates his body temperature without significant side effects and in essentially the same manner as the average person, no genuine issue exists as to whether his impairment "substantially limits" a major life activity. See Sutton, 527 U.S. at 482–83; 119 S. Ct. at 2146–47.

## B. Reasonable Accommodation

Even if Velez suffered from a disability as defined by the ADA, no reasonable jury could find that Agro failed to grant his request for a reasonable accommodation. When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation. 29 C.F.R. pt. 1630, App., § 1603.9. The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation. Hedrick v.

---

[9] Q: As I understand it, as long as you've got an ability to hydrate yourself, to cool down with water –
A: Yes, sir, and air.
Q: – and air, you can do manual work?
A: Yes, sir.
Q: Just like anybody else?
A: Yes, sir.

Western Reserve Care System, 355 F.3d 444, 457 (6th Cir. 2004).  The Appendix to the ADA regulations explains:

> The accommodation, however, does not have to be the "best" accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated. . . . [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.

29 C.F.R. pt. 1630, App., § 1630.9.

During his employment at Agro, Velez had loaded the feed barrels twice before.  Agro provided him with reasonable accommodation by allowing him to take breaks as necessary to cool himself off.  During his deposition, Velez testified that the only accommodation he needed was "air movement and clean water."[10]  Velez stated that he was capable of half-an-hour of "hard, physical labor" at 80 degrees before needing to take a break.  No evidence suggests that Agro would have denied Velez this accommodation on the day in question.  Instead of accepting this accommodation, however, Velez demanded a different accommodation:  to be completely excused from the task.

The reasonable accommodation analysis is hindered because Velez did not show up for work.  Any discussion of the accommodations that might have been provided or denied is mere speculation.[11]  The panel in Loulseged v. Akzo Nobel Inc., 178 F.3d 731 (5th Cir. 1999), confronted a similar issue:

> It is difficult to judge the reasonableness of accommodations when the employee withdraws before we can say with any authority what these accommodations would have been. . . . Given this time frame,

---

[10] Q: Did you tell them that you needed some accommodation to perform your job?
A: Just fans and water.  You know, air movement and clean water.

[11] Velez would have a significantly stronger claim if he had attended the loading and Agro had terminated him for taking too many breaks.

> we believe it is impossible to judge the offer [of accommodation] as being the beginning and end of Akzo's substitute accommodations. Had she not quit, Akzo might have provided her with a squadron of Olympic weightlifters and a Mercedes-Benz chemical transport vehicle to aid her in her tasks. It also might have ordered her on pain of termination to move fifty-pound containers unaided. Because of Loulseged's decision to quit, we simply cannot know.

Id. at 734–35. Agro might have allowed Velez to move a single barrel and let him rest while everyone else loaded barrels, or Agro might have ordered him to load barrels for hours without any breaks. Because Velez refused to show up, as in Loulseged, we simply cannot know.

Velez cannot benefit from this uncertainty by assuming that he would not have been allowed sufficient cooling breaks, the same accommodation that had previously proven sufficient. Even if the particular heat of that day required Velez to take additional breaks, he was capable of assisting in the loading, at least to some extent. The ADA does not require Agro to credit Velez's unreasonable assertion that no matter the number of cooling breaks, he could not participate in loading, to any degree, without becoming ill. At his deposition, Velez clearly stated that with sufficient opportunities to cool off, he was fully capable of performing manual labor. Agro provided Velez with these opportunities in the past, and Velez's unfounded assumption that Agro would not provide him with sufficient opportunities on the morning of July 16 does not oblige Agro to excuse him from the task.

No evidence suggests that Agro would not have provided the same accommodation that Velez previously received, and no evidence suggests that Velez could not have accomplished the task with this accommodation. Even if Velez was substantially limited in the major life activity of regulating body temperature, no genuine issue exists as to whether Agro denied Velez reasonable accommodation.

Because no genuine issue of material fact existed as to whether Agro denied reasonable accommodation to an individual substantially impaired in a major life activity, summary judgment in favor of Agro was appropriate.

## IV. ATTORNEYS' FEES

The EEOC additionally challenges the district court's award of attorneys' fees to Agro. Granting summary judgment does not compel the award of these fees. The district court may, in its discretion, award attorneys' fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421–22 (1978). The Court expressly warns against using post hoc reasoning to find that because the plaintiff did not prevail, his action was unreasonable. Id. We review the district court's award of fees for an abuse of discretion.

Although the district court noted deficiencies in the EEOC's investigation and conciliation, "in an effort to give the EEOC the benefit of every doubt," the court awarded attorneys' fees dated from May 6, 2006.[12] On that date, counsel for Agro telephoned the regional counsel for the EEOC and explained that Velez's deposition testimony revealed that he had no claim. The district court found that "the EEOC was absolutely unjustified in proceeding past the deposition of Velez."

At his deposition, Velez testified that he was not substantially limited in a major life activity because he could regulate his body temperature with breaks, fans, and air conditioning. Velez further testified that he was not denied reasonable accommodation because he was capable of performing manual labor

---

[12] Although the conclusion of the district court's opinion states May 6, 2005, the opinion as a whole and the amount awarded clarify that fees were awarded from May 6, 2006.

(at hotter temperatures than on the day in question) when given breaks to cool off and that Agro had never denied him a break.[13]  Following the deposition, there was no reason to proceed.  Even if the EEOC did not continue the suit in subjective bad faith, its action obviously lacked foundation at least on the question of Agro's denial of reasonable accommodation.  The district court did not abuse its discretion by awarding attorneys' fees to Agro.

The EEOC additionally challenges the amount of the award.  This court reviews the determination of reasonable hours and rates for clear error and the application of the relevant factors for abuse of discretion.  No Barriers, Inc. v. Brinker Chili's Tex., Inc., 262 F.3d 496 (5th Cir. 2001).  The factors relevant when calculating attorneys' fees are found in Johnson  v. Georgia Highway Express, 488 F.2d 714, 717–19 (5th Cir. 1974).  The district court need not specifically discuss the Johnson factors where it has applied the Johnson framework.  Cobb v. Miller, 818 F.2d 1227, 1232 (5th Cir. 1987).

The district court's award applies the Johnson framework:  "[T]he rates charged by the respective attorneys and staff members are adequately documented and represent reasonable rates for the time and skill of the attorneys involved."  The district court did not abuse its discretion in applying these factors, and the calculations of the reasonable hours and rates do not show clear error.

Because the action lacked any foundation after Velez's deposition, the district court did not abuse its discretion by awarding attorneys' fees against EEOC.

## V.  CONCLUSION

---

[13] Q: [Mr. Griffin] didn't tell you you couldn't take a break if you needed one?
A: No, sir.  He didn't tell me that.

The EEOC must vigorously enforce the Americans with Disabilities Act and ensure its protections to affected workers, but in doing so, the EEOC owes duties to employers as well: a duty reasonably to investigate charges, a duty to conciliate in good faith, and a duty to cease enforcement attempts after learning that an action lacks merit. In this case, the EEOC abandoned its duties and pursued a groundless action with exorbitant demands. The district court appropriately granted summary judgment for and awarded attorneys' fees to Agro, and its judgment is AFFIRMED.